UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:13-cv-21604-KMW

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,

      Plaintiff,

v.

FLORIDA NATIONAL UNIVERSITY, INC.
d/b/a FLORIDA NATIONAL UNIVERSITY
ONLINE LEARNING CAMPUS,

      Defendant.

_____/

## DEFENDANT FLORIDA NATIONAL UNIVERSITY'S
## MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS

Respectfully submitted,

PERETZ CHESAL & HERRMANN, P.L.
*Counsel for Defendant*
2 South Biscayne Blvd., Suite 3700
Miami, Florida 33131
Tel: 305-341-3000
Fax: 305-371-6807

Defendant, Florida National University, Inc. ("FNU"), pursuant to Fed. R. Civ. P. 54(d) and S.D. Fla. L.R. 7.3(a), hereby moves for an award of its attorneys' fees and non-taxable costs incurred in defending this action, and states:

## I.      INTRODUCTION

This trademark infringement case pitted a major, billion-dollar-a-year, state supported university with 50,000 students against a small private university with a budget and student body just 1/30th the size.  To FIU, the much larger school, losing the case would have changed nothing; but to FNU, the smaller school, losing the case would have meant bearing the extraordinary disruption of changing its name or forfeiting the ability to continue designating itself as a university. In the end, FNU vindicated its right to retain the Florida National University name and FNU initials, and as this court and the Eleventh Circuit both found, FNU did so by discrediting nearly every legal and factual argument FIU asserted.

In its recent *Octane Fitness* decision, the Supreme Court "considerably lowered the standard" for finding a case "exceptional" for purposes of awarding attorney's fees under the Lanham Act's attorney fee provision, 15 U.S.C. §1117(a).  In that case, the Court eliminated bad faith or litigation misconduct as prerequisites to finding a case exceptional under the Lanham Act, holding that an "exceptional case" is simply one that "stands out" from the ordinary case either (a) because of the wide disparity in the merits of each party's legal and factual position, or (b) because of the unreasonable manner in which the non-prevailing party conducted the litigation.  FNU acknowledges, as *Octane Fitness* reaffirmed, that an exceptional case still signifies a "rare," "unusual" and "not ordinary" case.

But nonetheless, FNU readily satisfies the *Octane Fitness* standard because the instant case markedly "stands out" from an ordinary case.  First, on the merits, FNU defeated all six federal and state counts asserted against it.  In its 31-page Order granting FNU's Motion for Summary Judgment

1

(the "Final Order")[DE 68], this Court methodically rejected nearly every legal argument and factual claim asserted by FIU:  "The Court finds little merit in FIU's arguments," (Final Order at 8), no "compelling or persuasive evidence of an intent to piggyback on FIU's name or goodwill," (Final Order at 30), and no "serious danger that the public is likely to perceive Florida National University and Florida International University as representing a single source…." (Final Order at 30)

Second, FIU litigated this case in "an unreasonable manner" because FIU pursued this case against FNU even though FIU's own senior administrators <u>knew</u> that FNU did <u>not compete</u> with FIU, caused <u>no confusion</u> with FIU and caused <u>no damages</u> to FIU.  Nonetheless, even after these <u>case dispositive admissions</u> were revealed in discovery, FIU relentlessly and inexplicably continued to pursue its case against FNU until it ultimately lost on all Counts.  It is one thing to lose a case; quite another to lose a case based on the testimony of your own people.  But that's what happened here.  That's what makes this case "stand out" from the usual case.  And that's why this is an "exceptional case" under Section 1117(a), entitling FNU to an award of its attorney's fees and costs.

## II.    PROCEDURAL BACKGROUND

Plaintiff, Florida International University ("FIU"), commenced this action against FNU on May 3, 2013, alleging that FNU's adoption in 2012 of the name "Florida National University" and the corresponding initials "FNU" infringed upon various FIU trademark rights arising under federal and state law.

Extensive fact and expert witness discovery and depositions ensued.  FIU deposed nine fact witnesses in South Florida and Atlanta, and four expert witnesses in Southern California, New York and Washington, DC.  FNU in turn deposed six fact witnesses in South Florida, one additional fact witness in Cedar Rapids, Iowa, and two FIU expert witnesses, one in South Florida and the other in Austin, Texas.  FIU and its outside marketing company produced over 20,000 pages of documents in

response to FNU's document requests.  Consequently, the fees and costs incurred by FNU were significant.

On March 4, 2015, this Court entered its Final Order, granting FNU's Motion for Summary Judgment on all counts of FIU's Complaint.  [DE 68]  On May 15, 2015, FNU filed its initial Motion for attorney's fees and costs (the "Fee Motion")[DE 84].  This Court stayed adjudication of the Fee Motion pending FIU's appeal of the Final Order to the Eleventh Circuit.  [DE 88.] On July 26, 2016, the Eleventh Circuit affirmed this Court's Final Order on all counts. *See Florida International University Board of Trustees v. Florida National University, Inc*., 830 F.3d 1242 (11th Cir. 2016)(hereinafter, the "*FIU Appeal*").  FNU then filed its initial motion for appellate fees (the "Appellate Fee Motion"), which the Eleventh Circuit transferred to this Court for adjudication.  This Court referred both fee motions to Magistrate Judge Simonton for disposition.  [DE 95].  On Feb 6, 2017, Judge Simonton entered an Agreed Order providing for the briefing on FNU's Fee Motion and Appellate Fee Motion (the "Briefing Order")[DE 97].  In accordance with the Briefing Order, FNU now timely files this Motion for Attorney's Fees and Non-Taxable Costs.

## III.    THE NEW "EXCEPTIONAL CASE" LEGAL STANDARD

Under the Lanham Act, a "court in <u>exceptional cases</u> may award reasonable attorneys' fees to the <u>prevailing party</u>." 15 U.S.C. § 1117(a)(emphasis added).  Because FNU prevailed against FIU on all six Counts asserted by FIU in this action, FNU is undeniably the "prevailing party" under Section 1117(a).  Thus, this motion turns solely on the issue of whether this case qualifies as an "exceptional case."

Prior to the Supreme Court's 2014 decision in *Octane Fitness*, the Eleventh Circuit held that an exceptional case under Section 1117(a) must involve "acts which the courts have characterized as malicious, fraudulent, deliberate, and willful." *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 846-847 (11th Cir. 1983).  Consequently, the Eleventh Circuit required "the elements of bad

3

faith or fraud" to satisfy the exceptional case standard. *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1495 n.11 (11th Cir. 1983), *cert. denied*, 465 U.S. 1102, 104 S. Ct. 1599.

In 2014, however, the Supreme Court adopted a far less stringent "exceptional case" standard in interpreting the identical "exceptional case" language contained in the Patent Act's fee-shifting provision. In *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S.Ct. 1749 (2014), the Supreme Court defined "exceptional" consistent with its ordinary dictionary meaning: as 'uncommon,' 'rare,' or 'not ordinary'; 'out of the ordinary course,' 'unusual' or 'special.'" *Id.* at 1756. In doing so, the Court *expressly* rejected the standard previously used by the Federal Circuit which, like the Eleventh Circuit, limited exceptional cases to those which were both "objectively baseless <u>and</u> … brought … in subjective bad faith." *Id.* at 1757 (emphasis in the original). Instead, the Court set forth two <u>alternative</u> grounds for an award of attorneys' fees under the new exceptional case standard:

> We hold, then, that an "exceptional" case is simply one that stands out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" and the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Id.* at 1756.

Under this new standard, "sanctionable conduct is not the appropriate benchmark," (*id.* at 1756), nor is bad faith: "something less than 'bad faith' we believe suffices to mark a case as 'exceptional.'" *Id.* at 1757. Instead, with reference to the similar fee-shifting provision of the Copyright Act, this Court held that a district court should consider nonexclusive factors including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1758, n. 6 (*quoting Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 535 (1994)(setting forth equitable considerations)). "This change in the law lowers considerably the

4

standard for awarding fees." *Oplus Technologies, Ltd. v. Vizio, Inc.,* 2015 WL 1600056, at \*3 (Fed. Cir. 2015).

Because the Lanham act contains an identical "exceptional case" provision for the award of attorney's fees (15 U.S.C. §1117(a)) to the one contained in the Patent Act (17 U.S.C. §285), it is now well settled that *Octane Fitness* also sets the governing standard for an award of attorney's fees under the Lanham Act.  *See Buccellati Holding Italia SPA v. Burcellati LLC, 2015 WL* 112012358 (S.D. Fla. 2015); *Tobinick v. Novella*, 2016 WL 4704945 (S.D. Fla. 2016) and cases cited therein.

**IV.    ARGUMENT -- FEES UNDER THE LANHAM ACT**

   **A.    This case is "exceptional" under the Lanham Act given the wide disparity in the respective strengths of FIU's and FNU's positions**

As noted above, under *Octane Fitness* "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case)…." *Octane Fitness,* 134 S.Ct. at 1756.  In Count I of its complaint, FIU alleged that FNU's use of its name and initials infringed upon FIU's federally registered mark in violation of the Lanham Act.  Given FIU's undisputed priority of use, the key issue was whether FNU's marks were "likely to cause consumer confusion." (Order at 5.)  In the Eleventh Circuit, likelihood of confusion is governed by consideration of seven factors, with "the type of mark and evidence of actual confusion [being] considered the most important." (Order at 5.)

Here, that FIU succeeded on only one of the likelihood of confusion factors – similarity of services – while FNU succeeded on the two most important factors – strength of the mark and actual confusion – clearly highlights the "wide disparity" in the merits of each party's case.  *Fair Winds*, 764 F.3d at 315.  Such a one-sided outcome makes this case easily "stand out" from others. *Octane Fitness*, 134 S.Ct., at 1756;  *see also Lugus IP, LLC v. Volvo Car Corp*., 2015 WL 1399175, at \*6 (D. N.J. 2015)(because plaintiff had "no objectively reasonable basis" to contend that defendant's product infringed plaintiff's patent, court awarded attorneys' fees under *Octane Fitness*."); *Renna v. County*

*of Union, N.J.*, 2015 WL 93800, at *8 (D. N.J. 2015)(awarding plaintiff fees under Section 1117(a) where there is a "significant disparity in the merits of the parties' respective positions, and that certain of defendant's positions were objectively unreasonable").

### 1.   This Court Rejected FIU's Trademark Infringement Claim (Count I)

#### (a)   Strength of the Mark

The strength of the plaintiff's mark is recognized as one of the two most important factors in the Eleventh Circuit's seven-factor test.  *See* Final Order at 11; FIU Appeal, 830 F.3d at 1260. This Court adopted FNU's argument that the extensive third-party use of the words "Florida" and "University" by other Florida universities undercut the strength of FIU's mark. (Final Order at 8.) Significantly, the Court rejected FIU's contention that this Court should exclude as "third parties" those other universities which, like FIU, were also part of the Florida State University System. Indeed, this Court found "little merit in FIU's arguments" given FIU's failure to cite "any record evidence or legal authority to support this conclusion." (Final Order at 8)  In particular, the Court noted how it "fail[ed]" to see how a consumer would know based on their names alone that, for example, Florida International University and Florida Atlantic University are part of the state university system and that Florida National University and Florida Memorial University are not." (Final Order at 9.)

This Court also rejected FIU's argument that other Florida state universities should be excluded from consideration because they were related to FIU:  "But once again, legal support for this argument is lacking." *Id*.  Indeed, the Court found that FIU's sole authority for this point, *National Football League Props, Inc. v. Wichita Falls Sportswear, Inc.*, 532 F. Supp. 651 (W.D. Wash. 1982), did not even stand for FIU's cited proposition.  (Final Order at 9.)

Finally, this Court rejected FIU's contention that FNU needed to show a substantially higher number of third-party users than the thirteen third-party users FNU cited.  This Court not only

rebuffed this argument – "[a]gain, FIU has cited no authority for this proposition," (Final Order at 10) – but also found that FIU's argument disregarded a significant body of case law holding that a similar number of third-party users could negate the strength of the claimed mark. *Id*. Consequently, this Court found that the strength of the mark factor "does not favor FIU's position" – a finding affirmed by the Eleventh Circuit. *See* Final Order at 11; *FIU Appeal*, 830 F.3d. at 1260.

(b)     <u>Similarity of the Marks</u>

The Court quickly disposed of FIU's contention that the words "National" and "International" are "so closely aligned as to create a likelihood of confusion among consumers" given the different meaning attached to each word: "[I]t is a reach to suggest that an object defined as 'international' necessarily includes those objects described as 'national.'" (Final Order at 11) FIU's argument also received a chilly reception at the Eleventh Circuit. *FIU Appeal*, 830 F.3d. at 1260 ("Again we remain unpersuaded.") This Court further found that the one letter difference in the initials made FNU's mark no more similar to FIU's mark than any other state universities "in this crowded field." *Id.* Thus, "examined in totality this factor does not weigh in favor of a finding of a likelihood of confusion." *Id.* The Eleventh Circuit affirmed this conclusion as well. *FIU Appeal*, 830 F.3d. at 1260.

(c)     <u>Similarity of Services</u>

Though noting the "obvious differences in the educational models offered by the two parties," this Court nonetheless found that a reasonable consumer could potentially conclude that the educational services provided by FIU and FNU were attributable to a single source. (Final Order at 13-14.) But while the Court found that this factor favored FIU, it was the <u>only</u> factor favoring FIU in the entire likelihood of confusion analysis.

7

(d)      Similarity of Trade Channels and Consumers

Even though it recognized "some degree of overlap" in FIU's and FNU's retail outlet and customers (Final Order at 14), this Court nonetheless concluded that such overlap was nullified by "significant" differences in student population (Final Order at 16), the "highly dissimilar" customer base of each party (Final Order at 15), and the sophistication and high level of investigation of prospective students in selecting a university. (*Id*.) Consequently, this "Court finds that this factor does not weigh significantly in favor of a finding of a likelihood of confusion." (Final Order at 16.) The 11th Circuit again agreed. *FIU Appeal*, 830 F.3d. at 1262.

(e)      Similarity of Parties' Advertising Media

Though FIU claimed similarity in the advertising method used by each university, the Court found such claim irrelevant given the meager "evidence of an overlap in the <u>audience</u> of the school's advertising." (Final Order at 17)(emphasis on the original.) Thus, the Court did not believe "this factor merits significant weight in its analysis...." (Final Order at 18) and the Eleventh Circuit agreed. *FIU Appeal*, 830 F.3d. at 1263.

(f)      Defendant's Intent

This Court rejected FIU's contention that FNU's prior knowledge of FIU's marks created, by itself, any inference of FNU's improper intent in adopting the Florida National University name as contrary to well-established case law.  (Final Order at 20.) This Court also rebuffed FIU's argument that FNU's "good faith" in assessing FNU's intent should be disregarded. (Final Order at 20, n.9.)  Indeed, the Court dismissed FIU's purported authority on this point: "Thus it is clear that contrary to FIU's assertion, this case [*Fuji Photo*] does not stand for the proposition that a defendant's good faith is immaterial to any inquiry into whether it acted in bad faith." (*Id*.) Consequently, this factor also did not favor a finding of a likelihood of confusion. (Final Order at 20.)  The Eleventh Circuit again concurred.  *FIU Appeal*, 830 F.3d. at 1264.

(g)     Actual Confusion

Even after FNU had used its new name for two years, FIU could produce only one communication that qualified as actual consumer confusion evidence – a single misdirected letter from a 10th grade student. (Final Order at 22.)  But as this Court held, this "sole, *de minimis* instance of consumer confusion is not enough to militate in favor of a finding [of] a likelihood of confusion." *Id*. This Court further found that purported confusion experienced by FIU's employees was "'short-lived confusion' that carries little weight or simply too vague to credit in this analysis." *Id*. Consequently, this Court found that the actual confusion factor – one of the two most important likelihood of confusion factors – "is insufficient to support a finding that there is a likelihood of confusion arising from FNU's marks." (Final Order at 23.)  The Eleventh Circuit again ratified this finding.  *FIU Appeal*, 830 F.3d. at 1265.

Taking the seven factors together, FIU never came close to sustaining its burden of proof on the issue of likelihood of confusion. Consequently, this Court granted FNU summary judgment on Count I.  (Final Order at 23.)  The Eleventh Circuit affirmed this conclusion given that FIU bore a higher burden of proof – "potential college students are relatively sophisticated consumers who are unlikely to be easily or meaningfully confused by similar-sounding university names" – and because the two most important factors – "evidence of actual confusion and the strength of the mark" – favored FNU.  *FIU Appeal*, 830 F.3d. at 1265.

### 2.     This Court Rejected FIU's False Association Claim (Count II)

Under Count II, FIU claimed that FNU violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),  "by creating a false impression that it is a public university associated with the State University System of Florida, of which FIU is a member, and thus creat[ed] the appearance that FIU and FNU are 'sister institutions.'" (Order at 25, quoting DE 19-1 at 16).  But this Court readily rejected this claim as misguided: "the relevant inquiry is whether FNU's use of the mark is likely to

lead consumers to confuse FNU <u>with FIU</u>." (Order at 26.)(emphasis in the original).  Moreover, because the survey commissioned by FNU found that only two out of 200 respondents (or 1%) believed FIU had any affiliation with FNU, this Court easily concluded that any purported confusion over FNU's affiliation with the State of Florida caused no "appreciable increase in confusion over FNU's affiliation with FIU, <u>which is the basis for this claim</u>." (Order at 26)(emphasis added). Consequently, this Court also granted FNU summary judgment on Count II. (Order at 27.)

The Eleventh Circuit was particularly dismissive of FIU's false association claim:

[W]e needn't definitively decide whether FIU's broader false association rationale falls with the scope of Section 43(a) because FIU has not explained how – <u>let alone pointed to any evidence establishing</u> – that it 'is likely to be damaged' by FNU's actions associating itself with Florida public universities…. FIU has not shown how it could have been harmed by people wrongly thinking that FNU is a Florida public university, <u>especially when any such association did not lead them to associate FNU with FIU.</u>

*FIU Appeal*, 830 F.3d. at 1267 (emphasis added).

In sum, under both counts of its Lanham Act claim, FIU's legal authority was either non-existent or contrary to settled case law, and its factual contentions consistently lacked any evidentiary support whatsoever.

In *Donut Joe's, Inc. v. Interveston Food Services, LLC*, 116 F. Supp.3d 1290 (N.D. Ala. 2015), the court awarded attorney's fees to a defendant where, as here, the plaintiff's marks were "quite weak" due in part to "widespread third party use of the elements of Donut Joe's marks," and the evidence of actual confusion amounted to "at most, five instances of consumer confusion over a three year period." *Id.* at 1294.  Because these two factors represented "the two factors most important to the consumer confusion test" and both "weighed heavily against Donut Joe's," the remaining factors "did not come close to presenting a question of material fact on the likelihood of consumer confusion." *Id.*

The facts in the instant case present an even greater justification for the award of attorney's fees since, as noted above, and unlike the facts in *Donut Joe's*, there was virtually no credible

evidence of actual confusion in this case.  As such, this case clearly "stands out" from the ordinary

case given the "wide disparity" in the "substantive strength" of each party's litigating position.  134

S.Ct. at 1756.  Accordingly, the *Octane Fitness* standard for an "exceptional case" entitling FNU to

an award of its fees and costs has clearly been met.

> **B.      This Case is also "Exceptional" Given the Blatantly "Unreasonable
>           Manner" in which FIU Litigated the Case.**

Under the *Octane Fitness* standard, an 'exceptional' case is also one "that stands out from

others with respect to… the unreasonable manner in which the case was litigated." *Octane Fitness*,

134 S.Ct. at 1756. As this Court found again and again in its Final Order, FIU lacked either the legal

authority or any credible factual basis to support the vast majority of its claims against FNU.  But

what is even more noteworthy is that FIU commenced this action even though FIU's own senior

administrators <u>knew</u> that FIU's key factual contentions were unsupportable.  In particular, FIU's

administrators knew that FIU and FNU were <u>not competitors</u>, they knew that there was <u>no confusion</u>

between FIU and FNU, and they knew that there were <u>no damages</u> caused by FNU's adoption of the

Florida National University name and FNU initials.  Yet inexplicably, FIU continued to advance these

claims even after discovery unmasked them as <u>baseless</u>.  Indeed, FNU would ultimately enter into

pre-trial stipulations – based on the testimony of its own witnesses -- that actually rendered its case

<u>un-winnable</u>.

In doing so, FIU brazenly violated its continuing duty to re-evaluate the merits of its case over

time:

> Should a position, even if previously not within the preview of exceptional behavior, migrate
> to a questionable classification, a party has the responsibility to react and respond accordingly.
> Thus, a party should continue to evaluate the reasonableness of its litigation strategy as the
> case progresses <u>to ensure that conduct does not cross the line from reasonable to questionable</u>.
> \* \* \* [Thus] the Lanham Act provides for an award of attorneys' fees when the conduct of
> the litigation <u>becomes unreasonable over time</u>.

*Design Resources, Inc. v. Leather Industries of America*, 2016 WL 5477611*3, 4 (M.D.N.C.

2016)(emphasis added).

In *Design Resources*, the plaintiff brought a false advertising claim under the Lanham Act against a competitor, but discovery subsequently revealed no evidence that the defendant's advertising was literally false or likely to lead to customer confusion. *Id.* at *5. Accordingly, the plaintiff's "reevaluation of its position should have been influenced by the fact that no facts were indicating consumer confusion and there were no questionable statements that fell within the contours of the Lanham Act." *Id.* Given the plaintiff's "failure to continually assess the substantive strength of its litigation position, particularly by the conclusion of discovery," the court found the case "exceptional" under the Lanham Act and awarded fees to the defendant. *Id.* at *6.

Similarly, in *Tobinick v. Novella*, 2016 WL 4704945 (S.D. Fla. 2016)(Rosenberg, J.), the plaintiffs persisted in pursuing their claims against defendant Novella after the court had previously ruled in favor of another defendant. The court awarded fees to defendant Novella under the Lanham Act as an "exceptional case" because plaintiffs "repeatedly failed to produce new arguments or evidence to distinguish the Court's prior rulings." *Id.* at *8.

As discussed below, both *Design Resources* and *Tobinick* apply with even greater force here. FIU did not need to wait for the completion of discovery or an adverse court ruling to know that its case lacked merit: FIU knew that its case lacked merit prior to commencing suit since its own senior administrators already possessed knowledge fatal it its case.[1] FNU's discovery simply exposed –

---

[1] Moreover, FIU was on actual notice of FNU's defenses well before it commenced this action. In response to FIU's September 2012 cease and desist letter, FNU's counsel transmitted a four-page letter to FIU setting forth in detail the legal and factual basis for rejecting FIU's claim of a likelihood of confusion between the two names, including the "crowded field" of significant third party use of the words "Florida" and "University" by other Florida universities. The reply letter also a referenced a 1989 settlement agreement between the parties where FIU had <u>consented</u> to FNU's use of the name Florida National College – a name under which the two school would "peaceably co-exist" for the next 20 years, as FIU's own 30(b)(6) witness later acknowledged in deposition. [DE 42, at ¶32] (A copy of the reply letter is attached as Exhibit "A."). Many of the same legal arguments and evidence cited in this letter were re-asserted by FNU in this action and were subsequently adopted by this Court in its Final Order rejecting FIU's position. FIU nonetheless elected to commence this action on May 5, 2013. *See Astornet Technologies, Inc. v. BAE Systems, Inc.*, 2016 WL 4141006 at *8 (D. Md. 2016)(awarding fees to defendant where plaintiff "cannot seriously maintain that it had a good-faith basis for continuing to pursue its infringement claim" where plaintiff was on notice as to the legal problems because "[defendant's] attorneys had sent several letters outlining the problems in detail.")

after much time and expense -- what those senior administrators already knew.  Nonetheless, FIU unreasonably persisted in pursuing the case even after discovery splintered its case.

      1.    FIU Litigated the Case in an "Unreasonable Manner" by Pursuing its Claims
even after its Own Senior Administrators Testified to their Invalidity

In *Bayer Crop Science AG v. Dow Agro Science, LLC*, 2015 WL 1197436 (D. Del. 2015), the court awarded fees to the prevailing defendant under *Octane Fitness* in part because the plaintiff, like FIU, took factual positions contradicted by its own witnesses: "Throughout this litigation, *Bayer* marched onward with a view of its case that was not supported by its own witnesses.… The positions *Bayer* took to support their contract interpretation agreements were directly contradicted by the record evidence *Bayer* had obtained through early discovery and *Bayer* should have made every effort to discover before filing suit." *Id.* at *9.  Here too, FIU repeatedly "marched onward with a view of its case that was not supported by its own witnesses." (*Id.*)

      (a)    FIU's own witnesses discredited FIU's "Strength of the Mark" Claim

First, on the critical likelihood of confusion factor,  "strength of the mark," FIU claimed that the other the Florida public universities using "Florida" and "University" in their names should be excluded as relevant third-party users because they did not represent bona fide third party competitors of FIU.  But FIU's argument flew in the face of statements and testimony from its own witnesses.

As discovery revealed, when FIU's marketing company, Statmats, asked FIU's marketing director, Terry Witherell, to identify FIU's "major competitors" in a marketing questionnaire, she answered in writing in the clearest possible terms: "Other Florida public universities."  *See* Exhibit Z to FNU's Motion for Summary Judgment, filed under seal (emphasis added).[2]

---

[2] In her deposition, however, Ms. Witherell professed an inability to name even a single competitor of FIU. [*See* Exhibit "B", attached hereto]  To put it gently, her failure to provide testimony on a critical litigation issue was disingenuous given that the same Ms. Witherell previously had no difficulty at all in identifying FIU's "competitors" to FIU's marketing company. Such evasiveness provides additional grounds for finding that FIU took unreasonable litigation positions in this case. *See Cross Commerce Media, Inc. v. Collective, Inc.*, 2014 WL 7323419 (S.D.N.Y. 2014)(granting

But Ms. Witherell was not the only senior FIU administrator to acknowledge that the other public Florida universities were FIU's competitors.  Luisa Havens, FIU's undergraduate Admissions Dean, was perhaps the person best suited to identify FIU's competitors.  In her deposition, she acknowledged without qualification that the other Florida state university schools represented FIU's "competitors" for prospective students.  [DE 38-2, at 46:19-22.]

Based on this testimony, this Court emphasized "that <u>FIU</u> identified some of these state schools as <u>competitors</u> to its marketing company." (Final Order at 9.)(emphasis added.)  Accordingly, this Court found that the other Florida state schools using "Florida" and "University" in their names would be "considered third-party users," rendering "the 'Florida International University' mark to be relatively weak." (Final Order at 10-11.)  Because "strength of the mark" is one of the two most important likelihood of confusion factors, FIU's position was factually untenable from the inception of the case <u>based on its own witnesses</u>, rendering its pursuit of this specious argument throughout the case flagrantly "unreasonable" under *Octane Fitness*.

(b)   <u>FIU's own witnesses discredited FIU's "Confusion" Claims</u>

FIU's confusion claims – the cornerstone of FIU's entire case – did not even survive the deposition of FIU's own 30(b)(6) witness.  In particular, FIU's 30(b)(6) witness on confusion, Rafael Paz, admitted that he was unaware of "any instance where somebody applied to FIU thinking that FIU was associated with FNU." (Paz Depo, DE 25-5, at 72:11-22).  Similarly, FIU's undergraduate Admissions Dean, Luisa Havens, was "unaware of any adverse impact, or impact at all on FIU admissions" caused by FNU's use of the Florida National University name or FNU initials. [DE 42, at ¶ 81.]

But this was not the end of FIU's problems.  Here again FIU's own marketing director, Terry Witherell, tripped up FIU's argument.  In her deposition, Ms. Witherell testified that she had <u>never</u>

---

defendant's motion for attorneys' fees under §1117(a) in part because plaintiff claimed that its "Chief Marketing Officer did not have relevant information when she clearly did.")

even heard of FNU prior to this suit (Witherell Depo, DE 25-23, at 71:7-17  ).  Similarly, the 30(b)(6) witness for FIU's marketing company also testified in her deposition that during her four years of work for FIU she never knew of FNU's existence -- "Not on my radar screen at all."  [DE 25-1, at ¶ 47.]  Needless to say, given that both FIU's own Marketing Director and FIU's own marketing company had never even heard of FNU, FIU had no business claiming that FNU's use of the Florida National University name and FNU initials caused a likelihood of confusion.

Ultimately, in the Pretrial Stipulation, FIU conceded and stipulated that FIU's internal and outside marketing staff "never treated FNU as a competitor" and that its undergraduate Admissions Dean was "unaware of any adverse impact, or impact at all on FIU admissions due to the FNU name." [See DE 42, at ¶¶ 80-83, 97-101.]  Moreover, and as the Eleventh Circuit pointed out in its opinion, "The parties stipulated that '[t]here has never been a single known instance during the application process where a prospective student has applied for admission to either FNU or FIU under the impression that FNU was associated with FIU.'" FIU Appeal, 830 F.3d at 1264.  These stipulations -- all going to the heart of FIU's infringement case – were all known to FIU before it commenced this litigation.  But FIU only admitted them at the conclusion of the case, thus subjecting FNU to vexatious litigation.  Clearly this case "stands out from others with respect to… the unreasonable manner in which the case was litigated." Octane Fitness, 134 S.Ct. at 1756)

(c)   FIU's own witnesses discredited FIU's Damages Claim

If FIU's self-defeating testimony on liability was bad, the testimony of its own witnesses on damages was even worse.  Throughout this action, FIU sought actual damages from FNU based on FNU's alleged infringement; or alternatively, FIU sought the disgorgement of FNU's profits attributed to FNU's alleged infringement.  Given the vastly different student demographics, the vastly different educational programs, and the vastly different tuition rates between FIU and FNU, FIU's monetary claim was farfetched from the inception of the case.  But once FIU's own witnesses testified

in deposition, it became glaringly indefensible.  Specifically, FIU's 30(b)(6) witness on this issue, Mr. Paz, admitted there was no monetary loss to FIU or monetary gain to FNU based on FNU's name whatsoever.  Indeed, he said he was not aware of "a single dollar in tuition that went to FNU by mistake and should have gone to FIU.  (Paz Depo, DE 25-5, at 72:11-22).  Also, as noted above, FIU's undergraduate Admissions Dean, Luisa Havens, was similarly "unaware of any adverse impact, or impact at all on FIU admissions" caused by FNU.  [DE 42, at ¶ 81.]

FIU can hardly deny that it had immediate access to such harmful testimony prior to suit – the testimony came from its own people.  Indeed, FIU's 30(b)(6) witness on damages, Mr. Paz, also served as FIU's in-house counsel, sent a demand letter to FNU in September 2012, and functioned as FIU's internal litigation contact throughout this action.  Nonetheless, even after FIU's witnesses made these destructive admissions, FIU unjustifiably continued to pursue its claim for monetary relief against FNU as if the FIU testimony and the FIU litigation existed in two parallel universes – all to the detriment of FNU.

In particular, FNU had to respond to FIU's allegations on damages (Complaint [DE 1, at ¶¶ 35, 41, 47, 52, 59, 65, and pp. 15-17]) and further respond to FIU's document requests and interrogatories on damages  (FIU Request for Production to FNU No. 6; FIU Interrogatory to FNU No. 6). In addition, FNU had to produce four witnesses relating to damages  (Deposition of Frank Andreu, at 91:2 – 107:15;  Deposition of Lourdes Andreu, at 16:16 – 36:10; Deposition of Maria Regueiro, at 80:16 – 81:6; 135:13 – 139:5; Deposition of Omar Sanchez, at 62:15 – 64:10).

Moreover, FNU needed to prepare rebuttal evidence on damages for use at trial because FIU continued to assert monetary relief in its pre-trial papers.  *See* FIU's pretrial stipulation [DE 42, at 22] ("Whether FIU is entitled to a legal remedy, including monetary relief.").  Remarkably, FIU continued to seek such monetary relief even though it had stipulated for purposes of trial that "FIU is not aware of a single dollar in tuition" that has been misdirected due to FNU's use of its marks" and that it was

"unaware of any adverse impact, or impact at all on FIU admissions due to the FNU name" – just as its two witnesses had testified a year earlier. [DE 42, ¶¶ 80-83.] Then, at the December 3, 2014 final hearing, FIU made no argument or evidentiary proffer on the issue of damages or profits whatsoever. In short, FIU dropped its pursuit of monetary relief in its entirety only at the end of the case.

In *Gravelle v. Kaba Ilco Corp.*, 2016 WL 3920208 (E.D. N.C. 2016), the plaintiff brought a Lanham Act claim against the defendant for falsely marking its products as "patent pending" when in fact defendant had not applied for a patent. *Id.* at *3. Nonetheless, the court found plaintiff's claim "exceptionally meritless" because plaintiff failed to "produce any evidence to suggest [its] sales had been damaged by defendant's false marking." Consequently, the court awarded defendant its attorneys' fees because "Plaintiff's lack of evidence demonstrated a lack of thoughtful consideration about the quantum of evidence necessary not only to prove his claim but to substantiate it at the most basic level." *Id.*

*Gravelle* applies with particular vigor here because FIU's own witnesses repudiated FIU's allegation of damages shortly after the case commenced. Nevertheless, FIU elected to pursue its damages claim to the bitter end. Clearly, under *Octane Fitness*, FIU's pursuit of its claim for monetary relief was beyond unreasonable.

> (2)    FIU Litigated the Case in an "Unreasonable Manner" by not Performing a Survey to Substantiate its Confusion Claim

FIU commenced this action with no evidence to support one of the two most important likelihood of confusion factors – evidence of actual consumer confusion. Nor did FIU perform a consumer survey after it commenced this action even though a likelihood of confusion survey is a well-established alternative method to establishing actual confusion in the marketplace. 6 McCarthy on Trademarks and Unfair Competition §§ 32:158 et seq. (4th ed.). The failure to introduce such a survey is a factor this Court can properly consider in evaluating the merits of FIU's litigation position. *See Broad. Publications, Inc. v. Burnup & Sims, Inc.*, 582 F. Supp. 309, 318 (S.D. Fla. 1983)(Morton,

17

C.J.)("First, there is no evidence that a single consumer has ever been actually confused while choosing to purchase a product or service offered by the parties. Second, no survey evidence is presented in this case such that either actual confusion or a likelihood of confusion is shown. This court is not alone in deeming these two particular omissions relevant.")(internal citations omitted).

In *Farouk Systems, Inc. v. AG Global Products, LLC*, 2016 WL 6037231 at *4 (S.D. Tex. 2016), the court awarded fees to the defendant in part because at "the time the lawsuit was filed, Plaintiff had no information that any consumers had been confused" by defendant's trade dress and because plaintiff "offered no consumer-survey evidence and offered no explanation for its decision not to do so." *Id.* at *3, 4. Instead, the defendant alone offered the only likelihood of confusion survey in the case which found that only 1.7% of the survey respondents associated the plaintiff's purported trade dress with defendant. Similarly in this case, the only survey offered was performed by Dr. Gerald Ford alone – an expert engaged by FNU. Dr. Ford's survey found no likelihood of confusion between the two schools, given that only two out of the two hundred respondents (or 1%) associated FNU with FIU. Both this Court and the Eleventh Circuit credited Dr. Ford's survey as establishing the lack of a likelihood of confusion. *See* Final Order at 26; FIU Appeal, 830 F.3d at 12; *See also Design Resources*, *supra* at *5 (awarding fees to defendant in part because the defendant's survey "did not reveal any confusion of consumers")

Here, given FIU's inability to introduce *any* credible evidence of actual consumer confusion in this case through the close of discovery, FIU's failure to introduce its own likelihood of confusion survey was conspicuous – especially where FIU had the time and resources to commission one – and further underscores FIU's unreasonable pursuit of this case under *Octane Fitness*.

**C.     The Need for Deterrence further Supports a Fee Award**

In determining whether the case "stands out" under *Octane Fitness*, this Court has the discretion to consider "the need in particular circumstances to advance considerations of

compensation and deterrence" as authorized by *Octane Fitness*, 134 S. Ct. at 1758, n.6. In *Design Resources*, *supra,* the prevailing defendant argued that given "the high amount of fees incurred," the court should "send a strong message to future litigants that they remain under a duty to evaluate the strength of their case as the law suit progresses." *Id.* at *7.   The court agreed, holding that considerations of deterrence "reinforce[ed] this court's decision to award attorney fees." *Id.*; *see also Gravelle, supra,* at *3 (awarding fees to the prevailing defendant in a patent case to "deter both this plaintiff and others from pursuing claims obviously lacking factual support to the detriment of this defendant and other defendants.")

In this case, the need for deterrence is magnified by the huge disparity in the size and financial ability of each university: FIU is a state-supported university with 50,000 students and an annual budget of over $1 billion (see R-42 at 3).   In contrast, FNU is a private university with just 2,800 students and approximately a $27 million budget. (R-42 at 12). Federal litigation is seldom inexpensive, but in this case the expense of litigation – at more the $700,00 in legal fees and costs just at the District Court level – fell disproportionally upon FNU, whose budget and student body is 1/30th the size of FIU.   The oppressive effect this case had on the school's finances and on the time of the school's senior administration heightens the need for deterrence by awarding FNU its attorney's fees and costs.

## V.   ARGUMENT -- FEES UNDER THE FLORIDA STATE CLAIMS

Counts III, IV, V, and VI of FIU's Complaint respectively asserted Florida state claims for dilution, trademark infringement, common law infringement, and cancellation of FNU's Florida trademark registration. This Court rejected FIU's dilution claim (Count III) largely on the same grounds that prompted this Court to reject finding a likelihood of confusion under the federal claims. (Final Order at 29-30) This Court summarily rejected the remaining Florida claims (Counts IV, V, and VI) because the test for these Florida claims is governed by the same test applied to the rejected

19

federal claims, and therefore failed for the same reason. (Final Order at 30-31.)  The Eleventh Circuit readily affirmed this Court's findings on all of FIU's state claims. *FIU Appeal*, 830 F.3d. at 1267-68.

Because FNU prevailed on all three of the state claims brought under the Florida Trademark Act, (Final Order at 27-31), it is within this Court's discretion to award FNU its attorney's fees and non-taxable costs on those claims under a 2005 amendment to the Florida Trademark Act which added a fee provision: "The court may also award reasonable attorney's fees to the prevailing party according to the circumstances of the case." § 495.141, Fla. Stat.  Notably, this state statute did not adopt the "exceptional case" limitation found under the federal statute.  Thus, on its face, the Florida fee statute is more liberal than the Lanham Act fee statute such that FNU's entitlement to fees under the Lanham Act would also support FNU's entitlement to its fees under the state statute as well.

FIU's fourth state law claim, unfair competition (Count V), arose from the same facts underlying FIU's federal unfair competition claim (Count II), such that an award of fees under the federal statute would similarly cover FNU's fees for its defense of the state unfair competition claim.

## VI.     CONCLUSION

Based on the foregoing legal authorities and arguments, FNU respectfully requests this Court enter an order:

(a)   Finding that FNU is entitled to an award of attorneys' fees and non-taxable costs, and awarding FNU all of FNU's fees and non-taxable costs incurred in its defense of this action, and further reserving jurisdiction to determine the amount of such fees and non-taxable costs in accordance with the procedures set forth in Local Rule 7.3(a);

(b)   Reserving jurisdiction to award FNU its taxable and other costs as claimed in FNU's Bill of Costs filed on April 15, 2015 [DE 77]; and,

(c)   Granting such other relief as this Court deems just.

Dated: February 27, 2017        Respectfully submitted,

By: /s/ Steven I. Peretz
Steven I. Peretz (Fla. Bar No. 329037)
Email: speretz@pch-iplaw.com
Michael B. Chesal (Fla. Bar No. 775398)
Email: mchesal@pch-iplaw.com
Moish E. Peltz (Fla. Bar No.  99611)
Email: mpeltz@pch-iplaw.com
Peretz Chesal & Herrmann, P.L.
2 S. Biscayne Blvd., Suite 3700
Miami, FL 33131
Tel.: (305) 341-3000
Fax: (305) 371-6807
*Counsel for Defendant*

## REQUEST FOR ORAL ARGUMENT

FNU believes that oral argument on this Motion will assist this Court, and respectfully requests that this Court schedule a hearing on the Motion after the briefing is concluded.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via email on April 17, 2015 in accordance with Local Rule 7.3(b), and now, on February 27, 2017, in accordance with Local Rule 7.3(b), is being filed with this Court and served on the counsel or parties of record in the manner specified on the Service List below.

/s/ Steven I. Peretz

**SERVICE LIST**
David K. Friedland, Esq.
Jaime Rich Vining, Esq.
FRIEDLAND VINING, P.A.
9100 S. Dadeland Blvd.
Suite 1620
Tel: (305) 777-1720
Fax: (305) 456-4922

*Counsel for Plaintiff*
**Via CM/ECF**

21